**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **KIMBERLY HOUSTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| ) | |
| **v.** ) | **No. 2:21-cv-2393** |
| ) | |
| **MEMPHIS LIGHT, GAS AND WATER** ) | |
| **DIVISION, INTERNATIONAL** ) | |
| **BROTHERHOOD OF ELECTRICAL** ) | |
| **WORKERS, INTERNATIONAL** ) | |
| **BROTHERHOOD OF ELECTRICAL** ) | |
| **WORKERS LOCAL UNION 1288, AND** | |
| **WILLIAM "RICK" THOMPSON,** | |
| | |
| **Defendants.** | |

**ORDER**

This is a workplace harassment and discrimination case. Plaintiff Kimberly Houston brings the action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII.") Before the Court are five motions: Defendant International Brotherhood of Electrical Workers Local Union 1288's ("Local Union 1288") Motion to Dismiss (ECF No. 23), Defendant International Brotherhood of Electrical Workers' ("IBEW") Motion to Dismiss (ECF No. 24), Defendant William Thompson's Motion to Dismiss (ECF No. 31), Defendant IBEW's Motion to Dismiss Defendant Memphis Light, Gas and Water Division's ("MLGW")

crossclaims (ECF No. 52), and Defendant Local Union 1288's Motion to Dismiss MLGW's crossclaims (ECF No. 54.)  For the following reasons, IBEW and Local Union 1288's Motions to Dismiss are DENIED. Thompson's Motion to Dismiss is GRANTED in part and DENIED in part.  IBEW and Local Union 1288's Motions to Dismiss MLGW's crossclaims are GRANTED in part and DENIED in part.

## I.   Background

The facts are taken from Houston's Second Amended Complaint. (ECF No. 22.)

Houston started working at MLGW in 2002.  (Id. ¶ 13.)  In February 2018, she accepted a position as the Assistant Business Manager for Local Union 1288, a chapter of IBEW that represents MLGW employees.  (Id. ¶¶ 9, 14.) As Assistant Business Manager, Houston reported to Thompson, Local Union 1288's Business Manager.  (Id. ¶ 14.)  Houston and Thompson retained their status as MLGW employees while working for Local Union 1288.  (Id. ¶ 15.)  Thompson reported directly to IBEW Vice President Brent Hall.  (Id. ¶ 20.)

Thompson and Houston had a consensual romantic relationship while working for Local Union 1288.  (Id. ¶ 24.)  Houston ended the relationship in May 2020.  (Id. ¶ 25.)  Thereafter, Thompson began sexually harassing Houston.  He "aggressively communicated" his anger with Houston for ending the relationship and repeatedly asked Houston for sex.  (Id. ¶ 26.)  Houston

rejected Thompson's requests.  (Id.)  Thompson threatened adverse employment actions against Houston if she did not submit to his sexual advances.  (Id. ¶ 27.)  He began assigning Houston tasks not usually assigned to an Assistant Business Manager and became overtly and unjustly critical of her work.  (Id. ¶ 29.)

Around September 2020, MLGW investigated Thompson for sexual harassment.  (Id. ¶¶ 32-33.)  MLGW notified Thompson and Brent Hall that it had initiated an investigation, but IBEW and Local Union 1288 did not join MLGW's investigation or separately investigate Thompson's behavior.  (Id. ¶¶ 34-38.)  Houston did not submit a sexual harassment complaint against Thompson and did not want to participate in the investigation.  (Id. ¶¶ 40, 42.)  MLGW told Houston that she was obligated to participate, and she eventually agreed to give an interview.  (Id. ¶ 42.)

Thompson was angry about the investigation and Houston's role in it.  To get back at Houston, he went on Local Union 1288's radio station and gave a series of interviews defaming and harassing her.  (Id. ¶ 48.)  Every MLGW and Local Union 1288 employee could have listened to the broadcasts.  (Id.)  Houston was embarrassed and shunned at work because of Thompson's statements, which caused her to suffer from depression.  (Id. ¶ 49.)  She sent recordings of Thompson's radio interviews to IBEW and Local Union 1288.  (Id. ¶ 51.)  Neither party investigated Thompson's comments.  (Id.)  On October 29, 2020, Thompson barred

Houston from attending Local Union 1288 board meetings.  (Id. ¶ 54.)  Houston complained to IBEW and Local Union 1288 about Thompson's behavior but received no response.  (Id. ¶ 59.)

On December 14, 2020, Thompson terminated Houston after discussing the decision with MLGW, IBEW, and Local Union 1288's Executive Board.  (Id. ¶ 60.)  Thompson told Houston he terminated her after considering several factors, including the need to reduce expenses.  (Id. ¶ 65.)  Thompson retained the other Assistant Business Manager, Corey Hester, who was hired as an Assistant Business Manager after Houston.  (Id. ¶¶ 62, 64.)  An investigation revealed that Thompson had fabricated the bases for terminating Houston, but Defendants took no further action.  (Id. ¶ 67.) [1]   IBEW later investigated Thompson for misappropriation of funds. (Id. ¶ 68.)

On June 2, 2021 Houston filed her Second Amended Complaint (Id.)  She brings claims of retaliation, gender discrimination, quid pro quo sexual harassment, and hostile work environment under Title VII and claims of negligent supervision against all Defendants.  She brings a claim of intentional infliction of emotional distress ("IIED") under Tennessee law against Thompson.  (Id.)

---

[1] The Second Amended Complaint does not specify which Defendants conducted the investigation.

On June 16, 2021, Local Union 1288 and IBEW separately filed Motions to Dismiss. (ECF Nos. 23, 24.) On June 21, 2021, Thompson filed his Motion to Dismiss. (ECF No. 31.) On September 29, 2021, MLGW filed its answer to Houston's Second Amended Complaint and crossclaims against IBEW, Local Union 1288, and Thompson. (ECF No. 45.) MLGW alleges promissory estoppel and quantum meruit against IBEW and Local Union 1288, contribution against IBEW, Local Union 1288, and Thompson, and indemnification against Local Union 1288. (Id.) On October 27, 2021, IBEW and Local Union 1288 separately filed Motions to Dismiss MLGW's crossclaims. (ECF Nos. 52, 54.)

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in her favor. Golf Vill. N., LLC v. City of Powell, 14 F.4th 611,

617 (6th Cir. 2021) (citing Cahoo v. SAS Analytics, Inc., 912 F.3d 887, 897 (6th Cir. 2019)).

If a court decides, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Ass'n Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## III. Analysis

### A.   The Motions to Dismiss Houston's Claims

Local Union 1288, IBEW, and Thompson have filed Motions to Dismiss.  (ECF Nos. 23, 24, 31.)  Houston opposes the Motions. (ECF Nos. 34,35,36.)  MLGW opposes Local Union 1288 and IBEW's Motions.  (ECF No. 33.)

### 1.   Local Union 1288's Motion to Dismiss

Local Union 1288 seeks dismissal of Houston's Title VII claims because it is not an employer under the Act.  (ECF No. 23.)  Title VII defines an employer as a "person engaged in an industry affecting commerce who has fifteen or more employees

for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]"  42 U.S.C. § 2000e(a).  Local Union 1288 does not have 15 or more employees.  (ECF No. 23-1.)  Local Union 1288 may still be considered an employer for purposes of Title VII under the single or joint employer doctrines.  See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 (6th Cir. 1997).

Houston and MLGW argue that the Second Amended Complaint alleges sufficient facts to plausibly state that Local Union 1288 and MLGW were Houston's single employer.  Under the single employer doctrine, two nominally independent companies may be considered so interrelated that they constitute a single employer subject to liability.  Id.  With a single employer, all employees are aggregated to determine whether the numerosity requirement for Title VII has been met.  Sanford v. Main St. Baptist Church Manor, Inc., 449 F. App'x 488, 491 (6th Cir. 2011).

To determine whether to treat two entities as a single employer, courts consider: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment;  (2) common management, common directors and boards;  (3) centralized control of labor relations and personnel;  and (4) common ownership and financial control. Swallows, 128 F.3d at 993-94 (citing York v. Tenn. Crushed Stone

Ass'n, 684 F.2d 360, 362 (6th Cir. 1982)).  "None of these factors is conclusive, and all four need not be met in every case."  Id. at 994.  However, "control over labor relations is a central concern."  Id.

The Second Amended Complaint does not allege facts supporting interrelation of operations.  Houston has not claimed that MLGW and Local Union 1288 share records, bank accounts, or offices.  See Swallows, 128 F.3d at 994; Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir. 1983) (interrelation of operations where parent company handled subsidiary's accounts receivable and its payroll and cash accounting).  There are no allegations of common management.  MLGW and Local Union 1288 do not share board members or common officers.  See Swallows, 128 F.3d at 994; Armbruster, 711 F.2d at 1339 (finding common management where president of one company was officer of the other).

Houston has alleged evidence of centralized control of labor relations and personnel between MLGW and Local Union 1288.  When evaluating centralized control, "the critical question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 (10th Cir. 1993) (quoting Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)); see Swallows, 128 F.3d at 995 ("So far as discrimination in hiring and firing on the basis of . . . forbidden characteristics

8

is concerned, the key powers are, naturally, those of hiring and firing.") (quoting <u>EEOC v. Illinois</u>, 69 F.3d 167, 171 (7th Cir. 1995)).  Courts look for evidence that "there is an amount of 'participation that is sufficient and necessary to the total employment process,' even absent 'total control or ultimate authority over hiring decisions.'" <u>Armbruster</u>, 711 F.2d at 1338 (quoting <u>Rivas v. St. Bd. Cmty. Colls. & Occupational Educ.</u>, 517 F.Supp. 467, 470 (D. Colo. 1981)).

Local Union 1288 employees retain all "rights, privileges, obligations, and responsibilities" of MLGW employees.  MLGW and Local Union 1288 paid the salaries of Local Union 1288 employees, including Houston and Thompson.  MLGW had the power to conduct a labor relations investigation into Thompson's conduct at Local Union 1288.  MLGW told Houston she was required to participate in its investigation into Thompson and represented that it would not allow Local Union 1288 or Thompson to retaliate against her for participating.  Thompson terminated Houston after discussing the decision with MLGW.  MLGW could have prevented Thompson from terminating Houston from her role at Local Union 1288.

The Second Amended Complaint does not allege common ownership and financial control.  <u>See</u> <u>Swallows</u>, 128 F.3d 995 ("If neither of the entities is a sham then the fourth test is

not met.") (quoting <u>EEOC v. Wooster Brush Co. Emp. Relief Ass'n</u>, 727 F.2d 566, 572 (6th Cir. 1984)).

Houston has alleged facts that show centralized control of labor relations between MLGW and Local Union 1288. She has not alleged facts supporting any of the other factors. Because all four factors need not be met in every case and centralized control of labor is a central concern, Houston has plausibly stated that Local Union 1288 and MLGW constitute a single employer for purposes of Title VII. Local Union 1288's Motion to Dismiss is DENIED.

### 2.   IBEW's Motion to Dismiss

IBEW contends that all unlawful conduct alleged in the Second Amended Complaint was attributable to Local Union 1288 and Thompson, and that Houston has not alleged specific facts to show unlawful conduct attributable to IBEW. Houston and MLGW argue that Local Union 1288 is an agent of IBEW. In the alternative, Houston argues that IBEW is her joint employer. IBEW rejects both arguments.

"Common law agency theories of vicarious liability govern the liability of international labor organizations for the acts of their local unions that violate Title VII and § 1981." <u>Alexander v. Loc. 496, Laborers' Int'l Union N. Am.</u>, 177 F.3d 394, 409 (6th Cir. 1999) (citing <u>Berger v. Iron Workers Reinforced Rodmen Loc. 201</u>, 843 F.2d 1395, 1407 (D.C. Cir.

1988)).  "Under general principles of agency, a union can be liable if its officers and agents actively participate in unlawful conduct.'"  Shimman v. Frank, 625 F.2d 80, 94 (6th Cir. 1980); see Alexander, 177 F.3d at 409 ("At common law, a principal may be held liable for the intentional torts of its agent if the agent's conduct is within the scope of his agency and if, with the knowledge of the conditions, the principal intends the conduct or its consequences.").  That is, a union "may only be held responsible for the authorized or ratified actions of its officers and agents." Shimman, 625 F.2d at 95 (citing N. Am. Coal Co. v. U.M.W., 497 F.2d 459, 466-67 (6th Cir. 1974)); see Alexander, 177 F.3d at 409 ("a plaintiff must adduce specific evidence that the international instigated, supported, ratified, or encouraged those actions, or that what was done was done by their agents in accordance with their fundamental agreement of association.") (internal quotations omitted).

In the Second Amended Complaint, Houston alleges that: Thompson was an employee and Business Manager of Local Union 1288; Thompson reported directly to IBEW's Vice President; IBEW had the authority to investigate and discipline Thompson and remove him from his position if he committed a terminable offense; Thompson discussed the decision to terminate Houston with IBEW; and IBEW investigated whether Thompson

misappropriated IBEW's funds.  These allegations plausibly state a claim that Local Union 1288, through its employee Thompson, was an agent of IBEW.  Defendant IBEW's Motion to Dismiss is DENIED.

### 3.   William Thompson's Motion to Dismiss

Thompson argues that the Court should dismiss the Title VII and the IIED claims against him.  He contends that he is not an employer under Title VII, and that the IIED claim is not plausible.

"[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Wathen v. Gen. Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997).  Thompson does not qualify as an employer under Title VII.  See 42 U.S.C. § 2000e(a).  Houston does not challenge Thompson's Motion to Dismiss the Title VII claims.  (ECF No. 36.)  Thompson's Motion to Dismiss Houston's Title VII claims is GRANTED.

Thompson argues that Houston's IIED claim is not plausible. To prove IIED, a plaintiff must show a defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff.  Bazemore v. Performance Food Grp., Inc., 478 S.W.3d 628,638 (Tenn. 2015). It is clear that Thompson's actions were intentional.

12

The bar for outrageous conduct is high.  See Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999) (calling the outrageousness requirement an "exacting standard").  Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities."  Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (quoting Medlin v. Allied Inv. Co., 398 S.W.2d 270, 274 (Tenn. 1966)).  Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id.  Sexual harassment can be outrageous conduct.  See, e.g., Strong v. HMA Fentress City. Gen. Hosp., LLC, 194 F.Supp. 3d 685, 690-91 (M.D. Tenn. 2015) (denying motion to dismiss IIED claim where defendant allegedly leaned penis into plaintiff's buttocks, stared at her breasts, visited a restaurant where plaintiff's minor daughter worked, and gyrated his pelvis at her);  Nesbitt v. Wilkins Tipton, P.A., 2011 WL 13244789, at *1-2 (M.D. Tenn. Nov. 10, 2011);  Scarborough v. Brown Grp., Inc., 935 F. Supp. 954, 963 (W.D. Tenn. 1995) (denying motion to dismiss where defendant allegedly harassed plaintiff with requests for sex, lewd comments, suggestions, gestures, and verbal abuse and attempted to get into plaintiff's home while she was there alone).

In her Second Amended Complaint, Houston alleges that Thompson "aggressively communicat[ed]" his displeasure that Houston ended their relationship and repeatedly asked her for sex. (<u>Id.</u> ¶ 26.) Despite Houston's repeated rejections, Thompson's sexual "demands grew in intensity and severity" and were accompanied by threats of adverse employment actions. (<u>Id.</u> ¶ 27.) After MLGW opened a sexual harassment investigation against Thompson, he defamed and harassed Houston on a radio station that could be heard by MLGW and Local Union 1288 employees. Thompson then made good on his threats and terminated Houston.

Thompson's alleged conduct is outrageous. It rises above "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" and goes beyond all bounds of decency. <u>Bain</u>, 936 S.W.2d at 622.

The Second Amended Complaint alleges that Thompson's conduct led Houston to suffer from depression, a serious mental injury. <u>See</u> <u>Rogers v. Louisville Land Co.</u>, 367 S.W.3d 196, 209-10 (Tenn. 2012) (depression a factor in determining whether plaintiff suffered serious mental injury). It is plausible that Houston would be "unable to adequately cope with the mental stress engendered" by Thompson's behavior. <u>Id.</u> at 201.

Houston has stated a plausible claim for IIED, and the Court retains supplemental jurisdiction over the claim.   Thompson's Motion to Dismiss the IIED claim is DENIED.

In his reply brief, Thompson seeks for the first time dismissal of Houston's negligent supervision claim.   (ECF No. 41.)   "Generally speaking, arguments raised for the first time in reply briefs are waived."  Palazzo v. Harvey, 380 F.Supp. 3d 723, 730 (M.D. Tenn. 2019);  see Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008) ("[R]eply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.").   Courts in the Sixth Circuit have applied this principle to reply briefs filed in support of a motion to dismiss.  See, e.g., Select Specialty Hosp. Memphis, Inc. v. Tr. Langston Co., Inc., 2020 WL 4275264, at *9 (W.D. Tenn. July 24, 2020);  Malin v. JPMorgan, 860 F.Supp. 2d 574, 577 (E.D. Tenn. 2012);  In re FirstEnergy Corp. Secs. Litig., 316 F.Supp. 2d 581, 599 (N.D. Ohio 2004).   Thompson may not seek dismissal of the negligent supervision claim in his reply brief. Thompson's Motion to Dismiss the negligent supervision claim is DENIED.

## B.   The Motions to Dismiss MLGW's Crossclaims

In its answer to Houston's Second Amended Complaint, MLGW filed crossclaims under Tennessee law for quantum meruit and

promissory estoppel against Local Union 1288 and IBEW, contribution against Local Union 1288, IBEW, and Thompson, and indemnification against Local Union 1288.  (ECF No 45.)  Local Union 1288 and IBEW have filed Motions to Dismiss the crossclaims against them.  (ECF Nos. 52, 54.)

### 1.   Quantum Meruit

To state a viable quantum meruit claim, a party must show: (1) there is no existing, enforceable contract between the parties covering the same subject matter;  (2) the party seeking recovery has provided valuable goods or services;  (3) the party to be charged received the goods or services;  (4) the circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated;  and (5) the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.  Doe v. HCA Health Servs. Tenn., Inc., 46 S.W.3d 191, 198 (Tenn. 2001) (citing Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998)).

MLGW argues for quantum meruit against Local Union 1288. MLGW alleges that, under the MOU, MLGW agreed to partially compensate Local Union 1288's Business Manager and Assistant Business Manager.  (ECF No. 45 p. 22 ¶ 19.)  Local Union 1288, as a party to the MOU, agreed to comply with the MOU's Article 6 non-discrimination clause.  Local Union 1288 allegedly breached

its duty to comply with Article 6.  MLGW contends that it would be unjust for Local Union 1288 to enjoy the benefit of MLGW's compensation after it breached Article 6 of the MOU.  (Id. p. 23 ¶ 24.)

MLGW has not stated a plausible quantum meruit claim because the alleged facts show that the MOU is a valid contract that covers compensation of the Assistant Business Manager and the Business Manager.  "A contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced."  Doe, 46 S.W.3d at 196;  see Dark Tobacco Growers' Co-op. Ass'n v. Mason, 263 S.W. 60, 67 (Tenn. 1924) ("It is invariably held that the promise of one party is a valid consideration for the promise of the other party.").

MLGW calls the MOU a set of "mutual promises between MLGW and Local Union 1288" pertaining to "wages, hours, working conditions, grievances, and other conditions of employment for employees."  MLGW says that by signing the MOU, Local 1288 "agreed and promised to comply with its terms."  (ECF No. 45 pp. 20 ¶¶ 1, 2, 4.)  According to the MOU, MLGW "partially compensates the Business Manager and the Assistant Business Manager of Local Union 1288 who act as the bargaining representatives of Local Union 1288 in negotiations with MLGW."  (ECF No. 45 p. 22 ¶ 19;

17

see ECF No. 45-1 pp. 50, 56.)  MLGW's crossclaim describes the
MOU as a mutual set of promises with definite terms and
sufficient consideration between MLGW and Local Union 1288.  That
is a contract.

In its response to the Motion, MLGW describes the MOU not
as a contract but as a "non-binding mutual agreement."  That
statement contradicts the text of the MOU, which says, "The
Agreement, when executed by the parties hereto, shall be binding
upon the Union and the Employer." (ECF No. 45-1 p. 52);  see
Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.3d
303, 309 n. 9 (Tenn. 2009) ("If the language is unambiguous, we
look to the plain meaning of the contract's terms to ascertain
the parties' intent.") (citing Planters Gin Co. v. Fed. Compress
& Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002)).

The allegations show that the MOU is a contract binding on
MLGW and Local Union 1288. Because there is a contract, MLGW's
quantum meruit claim against Local Union 1288 fails. Local Union
1288's Motion to Dismiss the quantum meruit claim is GRANTED.

MLGW's crossclaim for quantum meruit against IBEW is
premised on agency theory and an initial finding of quantum
meruit against Local Union 1288.  (ECF No. 45 p. 24 ¶ 27) ("To
the extent Local 1288 is acting as an agent of IBEW, IBEW is
also liable for this breach of Local 1288's agreement contained
in the MOU.").  Because MLGW has not stated a plausible quantum

meruit claim against Local Union 1288, its quantum meruit claim against IBEW also fails.  IBEW's Motion to Dismiss MLGW's quantum crossclaim is GRANTED.

### 2.   Promissory Estoppel

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991).   To state a valid promissory estoppel claim, a plaintiff must allege that (1) a promise was made;   (2) the promise was unambiguous and not unenforceably vague;   and (3) the plaintiff reasonably relied on the promise to the plaintiff's detriment.  Chavez v. Broadway Elec. Serv. Corp, 245 S.W.3d 398, 404-05 (Tenn. Ct. App. 2007).  Promissory estoppel is reserved for "exceptional cases" that "verg[e] on actual fraud." Baliles v. Cities Srv. Co., 578 S.W.2d 621, 624 (Tenn. 1979).  "[A]s a general matter, the theory of recovery is not viable when a valid contract exists."  Jones v. BAC Home Loans Servicing, LP, 2017 WL 2972218, at *9 (Tenn. Ct. App. July 12, 2017).

In its claim for promissory estoppel, MLGW alleges that Article 6 of the MOU is a promise that unambiguously required Local Union 1288 to abstain from discrimination, coercion, threats, or intimidation based on sex. (ECF No. 45.)  MLGW argues

it reasonably relied on Local 1288 to comply with Article 6 and not to discriminate against female employees. Local Union 1288's failure to comply with Article 6 has been to MLGW's detriment.

The facts alleged do not state a valid promissory estoppel claim. MLGW does not explain how the promise in Article 6 has induced any "action or forbearance." Amacher, 826 S.W.2d at 482. Promissory estoppel is disfavored under Tennessee law absent behavior "verging on actual fraud," Baliles, 578 S.W.2d at 624, particularly when there is a valid, underlying contract. Jones, 2017 WL 2972218, at *9. The MOU is a valid contract. MLGW has not alleged any behavior verging on actual fraud. Local Union 1288's Motion to Dismiss MLGW's promissory estoppel crossclaim is GRANTED.

MLGW's crossclaim for promissory estoppel against IBEW is premised on agency theory and an initial finding of promissory estoppel against Local Union 1288. (ECF No. 45 p. 22 ¶ 14) ("To the extent Local Union 1288 is acting as an agent of IBEW, IBEW is also liable for this breach of its promise contained in the MOU."). Because MLGW has not stated a plausible promissory estoppel claim against Local Union 1288, its promissory estoppel claim against IBEW also fails. IBEW's Motion to Dismiss MLGW's promissory estoppel crossclaim is GRANTED.

### 3.   Contribution and Indemnification

Under Rule 13(g), a "crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Fed. R. Civ. P. 13(g).  MLGW seeks contribution from IBEW and Local Union 1288 and indemnification from Local Union 1288 if Houston should be successful on her tort claims.[2]

### a.   Contribution

"[W]here two (2) or more persons are jointly or severally liable in tort for the same injury to person or property . . . there is a right to contribution among them even though judgment has not been recovered against all or any of them."  Tenn. Code Ann. § 20-11-102 (1999).  Houston claims that MLGW, IBEW, and Local Union 1288 negligently supervised Thompson.  She says that Defendants had knowledge that Thompson was unfit for the position and that they knew or should have known that Thompson was sexually harassing Houston yet took no corrective action.

Houston alleges that MLGW, IBEW, and Local Union 1288 are jointly or severally liable for the same tort of negligent supervision.  MLGW has a right to contribution from IBEW and Local Union 1288.  IBEW and Local Union 1288's Motions to Dismiss MLGW's contribution claim are DENIED.

---

[2] MLGW also seek contribution from Thompson.  Thompson has not moved to dismiss MLGW's crossclaim.

### b.   Indemnification

"The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." Houseboating Corp. Am. V. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977) (quoting S. Coal & Coke Co. v. Beach Grove Mining Co., 381 S.W.2d 299, 302 (Tenn. 1963)).  Indemnification can be express, through contract, or it can arise by implication from the relationship of the parties.  Id.  Implied indemnity can be contractual or equitable and is imposed by law without the consent or agreement of the parties.  Winter v. Smith, 914 S.W.2d 527, 541-42 (Tenn. Ct. App. 1995).  "Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties."  Id. at 542 (internal citations omitted).

Houston's negligent supervision claim is based on MLGW, IBEW, and Local Union 1288's failure to prevent Thompson's alleged discriminatory actions against Houston.  MLGW argues that it and Local Union 1288 agreed to refrain from any discriminatory conduct when they signed the MOU's Article 6 non-

discrimination clause.  MLGW claims that the Article 6 contains an implied indemnification clause for any damages that arise from a party's breach.  MLGW maintains that it did not breach Article 6, and that if Houston is successful on her negligent supervision claim, it is because Local Union 1288 breached Article 6.

MLGW has plausibly stated that Article 6 contains an implied indemnification clause.  Local Union 1288's Motion to Dismiss MLGW's indemnification claim is DENIED.

## IV.  Conclusion

For the foregoing reasons, IBEW and Local Union 1288's Motions to Dismiss are DENIED, Thompson's Motion to Dismiss is GRANTED in part and DENIED in part, and IBEW and Local Union 1288's Motions to Dismiss MLGW's crossclaims are GRANTED in part and DENIED in part.

SO ORDERED this 28th day of March, 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE